UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| YA LANDHOLDINGS, LLC | ) | CIVIL ACTION NO. 0:12-08 |
|     Plaintiff | ) | CIVIL ACTION NO. 7:12-19 |
| | ) | CIVIL ACTION NO. 7:12-20 |
| v. | ) | CIVIL ACTION NO. 6:12-30 |
| | ) | CIVIL ACTION NO. 5:12-36 |
| SUNSHINE ENERGY, KY I, LLC | ) | |
|     Defendant | ) | |

**MEMORANDUM, OPINION AND ORDER**

This matter is before the Court on a Motion to Remand [DE 5] filed by the Plaintiff YA Landholdings, LLC in each of the five actions captioned above. Because the defendant Sunshine Energy KY I, LLC has not met its burden of demonstrating that it is more likely than not that the amount in controversy in any of the actions exceeds $75,000, the five motions to remand will be granted.

**I.  Background.**

YA initiated these actions in five separate Kentucky state district courts with complaints filed under Kentucky's forcible detainer statutes against the Defendant Sunshine Energy KY I, LLC. In each of those complaints, YA asserts that it leased a commercial gas station to Appalachian Oil Co., Inc. on property in Kentucky (Johnson, Lawrence, Lee, Magoffin, and Owsley Counties) and that Appalachian Oil Company, Inc. later assigned its tenancy rights to Sunshine. YA asserts that Sunshine is in default on each lease and that it notified Sunshine of the defaults. It asserts that, after more than 30 days passed from its notice of default, it terminated the leases and requested that Sunshine vacate the premises. YA asserts that Sunshine has failed to vacate the premises

1

and it asked the state district court to order Sunshine to do so pursuant to the summary procedures set forth in Kentucky's forcible detainer statutes.

Sunshine removed the actions to this Court asserting that the Court has federal diversity jurisdiction over the actions pursuant to 28 U.S.C. § 1332(a)(a)(1) which grants federal courts jurisdiction over actions where the matter in controversy exceeds $75,000 and where the dispute is between citizens of different states. YA moves to remand each action to the Kentucky state district court in which it originated arguing that this matter is nonremovable because Sunshine is a Kentucky citizen and that the amount in controversy does not exceed $75,000.

**II.     Analysis.**

YA first argues that Sunshine is a Kentucky citizen and, thus, removal is prohibited under 28 U.S.C. § 1441(b)(2) (providing that a "civil action otherwise removable solely on the basis of . . . [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.") In response, Sunshine submits the affidavit of an employee of its affiliate who states that Sunshine's sole member is Sunshine Energy, LLC, a Kansas Limited Liability company, and that Sunshine Energy, LLC's sole member is Jeffrey B. Greene who is a Florida citizen. YA submits no evidence to the contrary. For purposes of diversity jurisdiction, "a limited liability company has the citizenship of each of its members." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Thus, Sunshine is not a Kentucky citizen even though it was organized under Kentucky state law. YA appears to concede this point because it no longer argues in its Reply brief that Sunshine is a Kentucky citizen.

There is no dispute that the parties are diverse. The next issue -- whether there is more than $75,000 in controversy – is more complicated. As a start, it is important to note that "[a] defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir.2006) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir.1993)). The defendant must prove that the amount in controversy "more likely than not" exceeds $75,000. *Id.*

With its forcible detainer actions, YA seeks only possession of the property. It does not seek any monetary damages. Further, there is no dispute that YA owns the property involved and that Sunshine has only a possessory interest under the leases. Thus, the amount in controversy does not equal the value of the property but instead the value of the right to possess the property. *See Pioneer Coal Co. v.* Bush, 16 F. Supp. 117, 119 (E.D. Ky. 1936) (holding that in an ejectment action by a landlord the amount in controversy is "limited to the value of the possession and the action is divested of all elements involving title"); *see also Baker v. Ryan*, 967 S.W.2d 591, 593 (Ky. App. 1997) (stating that the only issues in forcible detainer actions are possession by the plaintiff and detainer by the defendant); *see also Federal Nat. Mortg. Ass'n v. Loving*, No. 3:11-cv-00464-L, 2011 WL 2517267, at * 4 (N.D. Tex. 2011) ("The amount in controversy in a forcible detainer action…is not the value of the Property itself but rather the value of the right to occupy or possess the property."); *Deutsche Bank Nat. v. Hayes*, 2011 WL 2455574, at * 3 (N.D. Tex. 2011).

Some courts agree with YA that the amount in controversy in a forcible detainer action does not exceed $75,000 because the plaintiff seeks only restitution of the

3

premises but not damages. *See La Salle Bank Nat. Ass'n v. McCauley*, No. 10-1338, 2010 WL 3724387, at *3 n.4 (D. Minn. 2010) (citing cases); *Federal Nat. Mortg. Ass'n v. Sandoval*, No. CV-10-0346, 2010 WL 1759353, at * 1 (D. Ariz. 2010) ("Because the sole issue in a forcible detainer action is the right of possession, not title, there is no amount in controversy in the absence of other relief sought."); *Wells Fargo Bank, N.A. v. Meaney*, No. 1:09-cv-140, 2009 WL 1044560, at * 2 (W.D. Mich. 2009).

But there is no reason that a forcible detainer action should be valued differently than other actions seeking no monetary damages and seeking only injunctive or declaratory relief. In such actions, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).

The next issue then is how to determine the monetary value of the right of possession – the object of the litigation in a forcible detainer action. Some courts have indicated that the value of the possession right is equal to the property's rental value. *Aurora Loan Servicing, LLC v. Hampton*, No. 3:10-cv-2498, 2011 WL 721286, at * 2 (N.D. Tex. 2011); *Federal Home Loan Mortg. Corp. v. Khounlo*, No. 3:11-cv-0118-B, 2011 WL 249494, at * 2 (N.D. Tex. 2011). Even among these courts, however, there is disagreement over how to determine the rental value. In *Ezon v. Cornwall Equities, Ltd.*, the court determined that the value of the leasehold interest was equal to at least the annual rental. 540 F. Supp. 885, 889 (S.D. Tex. 1982). While in *Dosdall v. Fraser*, in evaluating a leasehold interest, the court determined that the "the conclusion seems inescapable that the amount is controversy is the rental value for the term of the lease."

4

246 F. Supp. 311, 314 (D. Mont. 1965); *see also Woodmen of the World Life Insurance Society v. Great Atlantic & Pacific Tea Company, Inc.*, 561 F. Supp. 640, 642 (N.D. Ill. 1982). In *BEM I, LLC v. Anthropologie, Inc.*, the court determined that "the value of possessing a certain piece of leased real estate includes, but is not necessarily limited to, the amount of back rent due at the time of removal." No. 98-C-358, 1999 WL 1212643, at *3 (N.D. Ill. 1999), *aff'd*, 301 F.3d 548 (7th Cir. 2002).

Back rent is not a valid measure of the amount in controversy here because, unlike the plaintiff in *BEM*, the plaintiff here makes no claim for back rent. Further, there is no basis for evaluating the amount in controversy as the rent due for some arbitrary time period less than the term of the lease. *See BEM*, 1999 WL 1212643, at *5 ("If the term of the lease is ten years, the court is hard-pressed to make sense of a formula that calls for the application of an arbitrary one year cut-off for determining the amount in controversy.")

More importantly, there is no basis for evaluating the amount in controversy as the rent due for the entire lease term. The object of the litigation in a forcible detainer action seeking only possession is not the rent due under the lease. This is clear because, even if YA loses this action and Sunshine is permitted to stay on the premises, YA will be entitled to the rent due under the lease. *See Sterl v.* Sears, 88 F. Supp. 431, 432 (N.D. Tex. 1950) (concluding that the "mere rental value of the land is not at stake" when the plaintiff seeks to evict a tenant because the plaintiff would be entitled to the rent due under the lease even if he lost). If, on the other hand, YA wins this action and Sunshine is required to leave the premises, Sunshine will not have to pay YA the rent due under the lease.

5

Another way of evaluating the amount in controversy in an action seeking injunctive relief is to total the costs of complying with the injunction. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006). In *Everett*, the court declined to decide whether the costs of complying with the injunction should include only the costs to the plaintiff or also the costs to the defendant. *Id*. Later, however, in *Cleveland Housing*, in evaluating the amount in controversy, the court seems to have considered the costs to the defendant of complying with an injunction. 621 F.3d at 560-61 (considering that the defendant's costs of complying with the requested injunction would have to exceed $3,000 for each of the 25 properties involved).

Unlike the plaintiff in *Cleveland Housing*, however, YA does not seek an injunction that would require Sunshine to undertake significant remedial measures on the properties involved or to demolish them or that would require Sunshine to alter its business practices. *Id*. at 557. YA only asks that the defendant be ordered to leave the premises. Sunshine provides no evidence regarding its costs in leaving the premises. Thus, even if this Court should consider the defendant's costs of complying with the requested eviction, Sunshine has not met its burden of demonstrating that those costs will exceed $75,000 for each property.

Similarly, some courts have valued the amount in controversy in an action such as this as the amount that the defendant stands to lose if the plaintiff is successful. *See Sterl*, 88 F. Supp. at 432 (concluding that the amount in controversy was met where "[i]t is clear that what the defendant [tenant farmer] has at stake and stands to lose in this suit" exceeds the jurisdictional minimum for federal court); *see also Woodmen of the* World, 561 F. Supp. at 642 (considering the defendant's argument that an unfavorable decision

would cause it to lose more than $200,000). In *Northup Properties, Inc. v. Chesapeake Appalachia, LLC*, in which the plaintiff landowners sought to declare an oil-and-gas lease null and void, the Sixth Circuit seems to have valued the amount in controversy as the defendant's "anticipated loss." 567 F.3d 767, 770 (6th Cir. 2009).

As evidence of its anticipated loss, Sunshine submits evidence of its anticipated revenues from each of the properties. But in *Northup*, the court did not equate the defendant's "anticipated loss" with the defendant's anticipated revenues from the property. Instead, the court relied on an affidavit submitted by the defendant containing various estimates including the "future cash flows" from the natural gas well on the property. *See id.* at 769; *see also id.* at 775 (White, J., concurring) (stating that the value of the leasehold interest should include not only the value of the oil and gas that might be recovered but also "the costs of recovery and sale. . . and any other factors normally considered by persons engaged in the enterprise of valuing such interests"). Sunshine most certainly will lose the revenue from the gas stations if it is evicted but it will also lose the costs incurred in producing those revenues. There is no evidence as to what those costs are.

Sunshine cites *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548 (7th Cir. 2002) in support of its assertion that the amount in controversy equals its anticipated revenues. In that case, the court mentions the fact that the defendant anticipated hundreds of thousands of dollars in revenue per month from the property involved. But, the court did not equate the amount in controversy with the defendant's anticipated revenues. Instead, the court seems to rely on a provision in the lease that explicitly provided that any improvements made by the defendant reverted to the plaintiff when the lease terminated and also on

7

evidence of the "hundreds of thousands of dollars in lost improvements and negotiating costs" incurred by the defendant. *Id*. at 553.

In *A. Levet Properties Partnership v. Bank One*, the court determined the value of the right of possession in a forcible detainer action was equal to "the marginal change in plaintiff's economic position if it obtains possession." No. 03-1708, 2003 WL 21715010, at *3 (E.D. La. 2003). If, for example, the plaintiff could re-lease the premises to a new tenant at a higher rental than the defendant paid, then the amount in controversy would be the difference between the rent paid by the new tenant and that paid by the defendant. *Id. see also MCC Mortg. LP v. Office Depot, Inc.*, No. 10-191, 685 F. Supp. 2d 939, 943 (D. Minn. 2010) (holding "amount in controversy should be measured by the difference between the plaintiff's current economic position and its position if successful in the litigation – that is, if it obtained possession of the premises and then re-leased it to another tenant"); *Dickal 770, LLC v. PRN Corporation*, No. 02-c-3206, 2002 WL 1285813, at * 3 & n.3 (N.D. Ill. 2002) (stating "a lease only has value (to either party) to the extent that the rent specified in the lease is below market value" and that "[t]he value to the landlord in terminating such a lease would be that it could re-let the premises for a higher rent. The value to the tenant in keeping such a lease would be in paying a lower rent than it would otherwise").

Assuming that this is an acceptable method for evaluating the amount in controversy here, Sunshine submits no evidence regarding YA's change in economic position if it obtains possession of the premises. Nor is there any evidence that the leases at issue are below market value.

8

## III. Conclusion.

As evidence of the amount in controversy, Sunshine submits only evidence of the rent it pays under each of the leases and its monthly revenues from the properties at issue. Because neither the rent nor the revenue proves the amount in controversy, Sunshine has not carried its burden of demonstrating that the amount in controversy in the above-captioned cases more likely than not exceeds $ 75,000.  Thus, the Court hereby ORDERS as follows:

1)  the motions to remand in each of the above-captioned cases are GRANTED;

2)  the above-captioned matters are REMANDED as follows:

   a)  Civil Action No. 7:12-CV-00020-KKC is REMANDED to the Magoffin District Court;
   b)  Civil Action No. 7:12-CV-00019-KKC is REMANDED to the Johnson District Court;
   c)  Civil Action No. 6:12-CV-00030-KKC is REMANDED to the Owsley District Court;
   d)  Civil Action No. 5:12-CV-00036-KKC is REMANDED to the Lee District Court; and
   e)  Civil Action No. 0:12-CV-00008-KKC is REMANDED to the Lawrence District Court;

3)  any other motions pending in these actions are DENIED as moot; and

4)  the Clerk of the Court SHALL FILE a copy of this Opinion and Order in the record of each of the above-captioned actions.

Dated this 22nd day of May, 2012.



Signed By:
*Karen K. Caldwell*   *KKC*
United States District Judge

9